IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01349-PSF-PAC

MINERVA WEST,

      Plaintiff,

v.

MICHAEL W. WYNNE, SAF,

      Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

O. Edward Schlatter, United States Magistrate Judge

      Plaintiff, *pro se*, brings an action for employment discrimination on the basis of disability and reprisal.  An August 7, 2006 Order of Reference referred this case to former United States Magistrate Judge Patricia A. Coan to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions.  Upon Magistrate Judge Coan's retirement, I assumed her caseload temporarily.  The matter before the court at this time is Defendant's Motion to Dismiss [Doc. #18; filed November 13, 2006].  The motion is fully briefed.  The matter is ripe for disposition.

I.

      Plaintiff alleges the following facts in her Complaint.  Plaintiff was a custodial worker (housekeeper) for the 21st Service Squadron at Peterson Air Force Base in Colorado Springs, Colorado.  (Compl., at 1, 6, 9)  In March 2003, she suffered an injury to her right shoulder and had corrective surgery in September 2003. (*Id.* at 10, 25)

      On January 12, 2004, Dr. Jag Walia prepared a Physician's Report of Worker's

Compensation Injury" in which he discharged plaintiff from his care because plaintiff had reached "Maximum Medical Improvement." (*Id.* at 26)   Dr. Walia  recommended that plaintiff be referred to "a Level II Physician for impairment rating." (*Id*)  Plaintiff underwent a Functional Capacity Evaluation by a Level II Physician, Dr. Wesley Brown, on January 27, 2004.  (*Id.* at 25)  Dr. Brown's prognosis was that "Claimant can work at a light duty level with maximum lifting of 20 lbs. and frequent lifting and/or carrying up to 10 lb." (*Id.*)

On January 29, 2004, plaintiff told her Lodging Manager, Susan Hansen, that she was "experiencing problems with her shoulder" which precluded her from effectively performing her cleaning duties.  (Compl. at 23)  Ms. Hansen contacted the Human Resources Office to schedule a physical exam for the plaintiff to determine plaintiff's fitness to perform her regular position as a housekeeper. (*Id.*)  Plaintiff took the fitness for duty examination on February 2, 2004. (*Id.* at 24)   The examiner concluded that "per Dr. Jag Walia's note [dated January 12, 2004], patient is restricted from overhead lifting with right arm.  Lifting [ ] 30 [pounds]." (*Id.*)

On April 2, 2004, Dr. Richard Price, a general practice physician, cleared plaintiff to return to light duty work, retroactive to March 16, 2004. (*Id.* at 10 )  Dr. Price diagnosed plaintiff with a bone spur and arthritis in her left shoulder. (*Id.*)  Dr. Price's light duty work restrictions included "no lifting or pushing or pulling objects [greater than] 50 [pounds]." (*Id.*)

The Custodial Work Supervisor notified plaintiff on October 21, 2004 that, effective October 25, 2004, her work schedule would be reduced from eight to four hours a day. (Compl., at 15) The Supervisor stated that plaintiff's hours were being reduced because

another injured worker was returning from leave and needed to be accommodated. (*Id.* at 14) The Air Force Manual 34-310, paragraph 1.8.11, provides that "work schedules may be changed by supervisors/managers by providing a minimum of 24 hours notice to the employee." (*Id.* at 15)

On November 19, 2004, the Custodial Work Supervisor informed plaintiff by letter that plaintiff was relieved from performing light duty and would be expected to return to full duty because  plaintiff's "recent work restriction evaluation" indicated that plaintiff had reached maximum medical improvement and [was] able to return to normal duty with some restrictions." (Compl. at 9) The restrictions cited in the letter included: "no lifting, pulling or pushing over 20 pounds," and no reaching or working above her shoulder "not to exceed lifting over 20 pounds." (*Id.*)  The Supervisor advised plaintiff that she could "perform all work related duties on a daily basis as per [her] job description." (*Id.*)  Plaintiff was further advised that failure to work her normal duty as directed would lead to administrative disciplinary action, including suspension or termination. (*Id.*)

Plaintiff states that after she returned to full duty, she re-injured both her arms. (Compl. at 19)  Plaintiff reported for "light duty" work after the re-injury, but was sent home because she refused to work full duty because of her medical restrictions. (*Id.* at 5, 6) Plaintiff is still employed by the defendant. (*Id.* at 6)

B.    Administrative Charges of Discrimination and Reprisal

Plaintiff filed a formal complaint of discrimination based on disability with the agency's EEO office on May 8, 2004. (Declaration of Hazel Lowe, attached to Defendant's Motion to Dismiss ("MTD"), at ¶3, and attached Ex. A).  On October 24, 2004, plaintiff

amended her complaint of discrimination to include additional allegations of disability discrimination. (*Id.* at ¶4) The Administrative Judge issued a "recommended decision" on March 14, 2006. (Defendant's MTD, Ex. A-2) The Air Force Review Boards Agency determined to fully implement the decision of the Administrative Judge on April 25, 2006. (Defendant's MTD, Ex. A-3) The decision of the Air Force Review Boards Agency constituted a final order in the administrative action and informed plaintiff that she had the right to file a civil action. (*Id.*)

On April 10, 2006, plaintiff filed a formal complaint with the agency's EEO office alleging that her employer retaliated against her for her prior EEO activity. (Lowe Declaration, at ¶7, and attached Ex. B) Plaintiff filed suit in this court before she completed the administrative processing of that complaint. (Lowe Declaration, at ¶8)

Plaintiff's claims, in her Complaint, filed June 24, 2006, that her employer discriminated against her on the basis of her disability, and retaliated against her for filing an EEO complaint.

II.

Plaintiff filed her complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 and 2000e-3(a). However, only Section 501 of the Rehabilitation Act, 29 U.S.C. §791, provides a private cause of action for federal employees for alleged employment discrimination based on disability. *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1477 (10th Cir. 1988). Accordingly, I liberally construe plaintiff's claims as arising under the Rehabilitation Act. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)(directing courts to liberally construe *pro se* pleadings).

4

A.    Motion to Dismiss Reprisal Claim for Lack of Subject Matter Jurisdiction

Defendant seeks dismissal of plaintiff's reprisal claim for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) because plaintiff failed to exhaust her administrative remedies prior to seeking judicial relief.

The party bringing an action in federal court bears the burden of showing that the case falls within the court's subject matter jurisdiction. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994).  Where the defendant's challenge to the court's subject matter jurisdiction is lodged as a facial attack on the complaint, the court must accept the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  If the defendant goes beyond the allegations of the complaint and challenges the facts upon which subject matter jurisdiction depends, the court may not presume the truthfulness of the plaintiff's factual allegations, but must resolve disputed issues of fact. *Id.* at 1003.  In such a case, the court's reference to documents outside the pleadings does not convert the Rule 12(b)(1) motion into a Rule 56 motion.  *Id.*

Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Section 501 of the Rehabilitation Act.  *See Woodman v. Runyan*, 132 F.3d 1330, 1341 (10th Cir. 1997); *Khader v. Aspin*, 1 F.3d at 968, 971 and n.3 (10th Cir. 1993).  A claimant must file an administrative charge of discrimination for each individual discriminatory or retaliatory act.  *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003)(citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)(rejecting application of the "continuing violation" theory)).

Under 29 C.F.R. §1614.407, a federal employee claiming employment

discrimination may file a civil action:

> (a) Within 90 days of receipt of the final action on an individual complaint if no appeal has been filed;

> (b) After 180 days from the date of filing an individual complaint if an appeal has not been filed and final action has not been taken;

> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or

> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

Defendant's unrefuted evidence shows that plaintiff filed the instant civil action less than ninety days after she filed her EEO complaint, before the agency had an opportunity to investigate and act on it.   Because plaintiff failed to exhaust administrative remedies for her reprisal claim, that claim should be dismissed for lack of subject matter jurisdiction. *See Khader*, 1 F.3d at 971 (recognizing that complainant who abandons her claim before the agency has reached a determination has failed to exhaust her administrative remedies)(internal citation omitted).

B.      Motion to Dismiss Disability Discrimination Claim under Rule 12(b)(6)

Defendant moves to dismiss plaintiff's disability discrimination claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief.

I accept plaintiff's well-pleaded factual allegations as true in considering a Rule 12(b)(6) motion and resolve all reasonable inferences in plaintiff's favor.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Bauchman v. West High School*, 132 F.3d 542, 550 (10th Cir. 1997)(internal citations omitted).   Moreover, I construe plaintiff's *pro se* pleading liberally.  *Haines*, 404 U.S. at 520-21.   Dismissal is appropriate only if "it

6

appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged and it would be futile to give [her] the opportunity to amend." *Perkins v. Kan. Dept. of Corrections*, 165 F.3d 803, 806 (10th Cir.1999); *see, also, Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Defendant's sole argument for dismissal of plaintiff's disability discrimination claim is that her factual allegations preclude a finding that plaintiff was "disabled" under the Rehabilitation Act.

The elements of a prima facie claim of employment discrimination under the Rehabilitation Act are: (1) that the plaintiff is disabled; (2) that she would be "otherwise qualified" to perform the essential functions of her job; (3) that the program/employer receives federal financial assistance (or is a federal agency); and (4) that the program/employer has discriminated against the plaintiff on the basis of disability. *See McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004); *Woodman*, 132 F.3d at 1338.

The Rehabilitation Act itself defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. §705(9)(B). The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12102(2) defines "disability" to include any of the following: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). The ADA's definition of "disability" was incorporated into the Rehabilitation Act

by a 1992 amendment. *See* 29 U.S.C. §794(d)(providing that, in employment discrimination cases alleging violations of the Rehabilitation Act, "[t]he standards used to determine whether this section [of the Rehabilitation Act] has been violated ... shall be the standards applied under title I of the Americans with Disabilities Act"); *see, also,* EEOC Interpretive Guidelines for the Rehabilitation Act, 29 C.F.R. §1614.203(b)(stating that the standards used to determine whether section 501 of the Rehabilitation Act has been violated shall be the standards applied under Title I of the ADA, as such sections relate to employment, set forth at 29 C.F.R. part 1630).

Plaintiff has stated facts to show that she has a physical impairment. *See* 45 C.F.R. §84.3(j)(2)(i)(defining "physical impairment" to include "any physiological disorder or condition" [of the neurological or musculosketelet systems]"); 29 C.F.R. §1630.2(h)(same). Construing her complaint liberally, I recommend finding that plaintiff is alleging that her impairment substantially limits her major life activities of lifting and, possibly, working.

Lifting and working are major life activities under the Rehabilitation Act and the ADA. *See* 45 C.F.R. §84.3(j)(2)(ii)(working); 29 C.F.R. §1630.2(i)(working); *MacKenzie v. City and County of* Denver, 414 F.3d 1266, 1275 (10th Cir. 2005)(recognizing "working" as a major life activity protected by the ADA); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1173-74 (10th Cir. 1996) (holding that "lifting is a major life activity" under the ADA).

I first consider whether plaintiff has alleged facts sufficient to show that her physical impairment substantially limits her major life activity of lifting.

An impairment substantially limits a major life activity when "the impairment's impact [is] permanent or long term" and "prevents or severely restricts the individual from doing

activities that are of central importance to most people's daily lives." *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 198 (2002); *see, also,* 29 C.F.R. §1630.2(j)(2) (stating that the term "substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.")

In *Lowe*, the Tenth Circuit held that a fifteen-pound permanent lifting restriction is substantially limiting on its face and does not require further comparative evidence as to the general population's lifting abilities.   87 F.3d at 1174. However, a twenty-pound permanent lifting restriction will require comparative evidence. *See Buettner v. North Carolina County Mental Health Center*, 158 Fed.Appx. 81, 87 (10th Cir. (Okla.) 2005)("[A] twenty-pound lifting restriction is not, as a matter of law, substantially limiting on its face"); *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1160 (10th Cir. 2002)(noting Fifth Circuit precedent that a twenty-pound lifting restriction, is not, by itself, substantially limiting on the ability to lift); *Velarde v. Associated Regional and University Pathologists*, 61 Fed.Appx. 627, 630 (10th Cir. (Utah) 2003)(holding that twenty-five pound lifting restriction is not substantially limiting on its face, citing precedent from Fourth, Eighth and Ninth Circuits); *see, also, Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240-41 (10th Cir. 2001) (evidence of a permanent forty-pound lifting restriction, without more, was insufficient to create triable issue on whether plaintiff's impairment was substantially limiting on major life activity of lifting).

Plaintiff's factual allegations, construed in her favor, show that she has a permanent

maximum lifting restriction in her right arm of twenty pounds, with frequent lifting up to ten pounds, and a maximum lifting restriction in her left arm of fifty pounds.  Because these lifting restrictions are not substantially limiting on their face, plaintiff will be required to present comparative evidence about the lifting abilities of the general population.  At the pleading stage, however, I recommend finding that plaintiff's allegations that she has an impairment that substantially limits her major life activity of lifting are sufficient to withstand defendant's Rule 12(b)(6) motion to dismiss.

I further recommend finding, however, that plaintiff has failed to allege facts sufficient to state a claim that her physical impairment substantially limits her major life activity of working because plaintiff does not allege that she is unable to perform either a class of jobs or a broad range of jobs in various classes.  *See McKenzie*, 414 F.3d at 1276 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-92 (1999).  Instead, plaintiff alleges only that she cannot perform the regular duties of a custodial worker.  Accordingly, to the extent plaintiff claims that she is "disabled" because of a physical impairment which substantially limits the major life activity of working, that claim should be dismissed.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Defendant's Motion to Dismiss [Doc. #18; filed November 13, 2006] be **granted in part and denied in part** as follows:

Plaintiff's claim for reprisal under the Rehabilitation Act should be DISMISSED for lack of subject matter jurisdiction because plaintiff failed to exhaust her administrative remedies.

10

Plaintiff's claim of disability discrimination under the Rehabilitation Act should be DISMISSED to the extent the alleged disability is a physical impairment which substantially limits plaintiff in her major life activity of working.

Defendant's motion to dismiss plaintiff's disability discrimination that is based on a physical impairment which substantially limits plaintiff in her major life activity of lifting should be denied.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated May 22, 2007.

BY THE COURT:

s/ O. Edward Schlatter
O. EDWARD SCHLATTER
United States Magistrate Judge